UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
|---|---|---|---|
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jeffrey Fillerup | Dr. Dal Singh<br>Surjit Soni |

**Proceedings:**    DEFENDANTS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. No. 146, filed July 6, 2015)

## I. INTRODUCTION AND BACKGROUND

On August 7, 2013, plaintiff Bioriginal Food and Science Corporation ("Bioriginal") filed this action against defendants Biotab Nutraceuticals, Inc. ("Biotab"); Global Product Management, Inc.; Gregory Andruk; and Adam Zwicker. In brief, Bioriginal alleges that defendants ordered specially designed nutritional supplements from Bioriginal, accepted delivery, then wrongfully refused to pay for the supplements. The operative Second Amended Complaint ("SAC"), filed on March 26, 2014, asserts claims for (1) breach of contract, (2) account stated, (3) open book account, (4) goods provided, and (5) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* Defendants have filed counterclaims for breach of contract and violations of the UCL. Dkt. No. 30.[1]

On July 6, 2015, defendants filed the instant motion for partial summary judgment on all of Bioriginal's non-UCL claims and defendants' counterclaims for breach of contract and misrepresentation. Dkt. No. 146. Bioriginal opposed the motion on July 13,

---

[1] On November 5, 2013, the parties stipulated to dismiss Zwicker. Dkt. No. 11. Pursuant to another stipulation, defendants dismissed without prejudice an additional counterclaim for fraudulent misrepresentation. Dkt. No. 34. On June 15, 2015, the Court denied a motion to modify the scheduling order so as to file additional counterclaims, including a counterclaim for misrepresentation. Dkt. No. 124.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
|---|---|---|---|
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

2015, and defendants filed a reply on July 20, 2015. Dkt. Nos. 156, 172. On August 3, 2015, the Court held a hearing on the motion. Having considered the parties' arguments, the Court finds and concludes as follows.[2]

## II. FACTUAL BACKGROUND

### A. Undisputed Facts

Bioriginal alleges that in or about November 2012, it and defendants entered into a contract by which Bioriginal would develop, manufacture, and sell to defendants two nutritional supplements, herein referred to as "Eye Softgels" and "Ultra Krill Capsules" (collectively the "Products"). SAC ¶¶ 7–8, 14. Bioriginal alleges that defendants agreed to pay for the development and manufacturing of the Products and purchase from Bioriginal (1) "a minimum quantity of 12 million units of Eye Softgels at the price of $0.125 dollars per unit"; and (2) "a minimum of 15 million units of Ultra Krill Capsules at the price of $0.24 per capsule." Id. ¶ 14.

On October 16, 2012, Biotab placed a purchase order for Eye Softgels. See Dkt. No. 146-2 (Soni Decl.) Ex. A at 1. This purchase order states: "As the development process progresses additional information—formula, price (finalized), availability (finalized), dosage, and other critical information—will be included." Id. On October 17, 2012, Biotab placed a purchase order for Ultra Kill Capsules, which reads in part: "Formula developed by Capsugel and Product Development Center, Boston." Id. at 2. That order then states: "As the development process is finalized, additional information—formula number, dosage, and other critical information—will be included." Id.[3]

---

[2]The Court is skeptical of defendants' assertion that the Court relieved them of their obligation to meet and confer regarding any contemplated summary judgment motion under Local Rule 7-3. Nevertheless, the Court declines Bioriginal's invitation to deny the instant motion on the basis of any failure to meet and confer.

[3]To the extent the Court cites to the objected-to evidence, Bioriginal's conclusory evidentiary objections, Dkt. No. 156-2, are OVERRULED. With regard to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

### B.  Additional Background Regarding the Products' Formulas

It is undisputed that Don Stables ("Stables") worked with defendants in some capacity that involved communicating with Bioriginal about formulas for the Products. Defendants refer to Stables as their "formulation consultant," and assert that he "approved formulations submitted by [Bioriginal] in December 2012." Def.'s Statement of Undisputed Facts ("DUSF") ¶ 4.  Defendants submit a formula specification for "Ultra Krill Capsule Serial Number: NPCL 090420," signed by Stables "for and on behalf of Biotab Nutraceuticals," on December 5, 2012.  See Soni Decl. ¶ 4 & Ex. B.  Biotab's Chief Operating Officer, Adam Zwicker ("Zwicker"), declares that he "authorized Donald Stables', Biotab's formulation consultant's, approval of the draft formulation for the Ultra Krill capsules in December 2012," but that "[n]o changes to that formulation were ever presented to Biotab and Biotab never approved any deviations from that formulation after December 2012." Dkt. No. 146-3 (Zwicker Decl.) ¶¶ 1, 3.

Defendants assert that Bioriginal subsequently changed the Product formulas without receiving defendants' approval.  As evidence of unauthorized changes, defendants cite Bioriginal's supplemental response to an interrogatory asking Bioriginal to identify the manner in which products "differed in any respect [from] the corresponding formula provided by non-party Don Stables."  See Soni Decl. ¶ 5 & Ex. C at 7.  The cited supplemental response mentions modifications to the Ultra Krill Capsule formula made in January or February 2013.  Id. at 8.[4]

---

documents attached to the declaration of Surjit P. Soni, Bioriginal's authentication objections lack merit.  Moreover, Bioriginal's hearsay objections fail because the evidence is either not offered for the truth of the matter asserted, is not an assertion at all, or falls within a hearsay exception, such as the party-opponent exception.

[4]The response also states that the modifications were approved by employees of Bioriginal and Capsugel, that the "agreement between Bioriginal and the Defendants did not require Defendants' approval for modifications to the Ultra Krill Formula," and that Bioriginal was "aware of only one production formula for the Eye Softgels." Soni Decl. Ex. C at 8–9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
|---|---|---|---|
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

 Cameron C. Kupper ("Kupper"), Bioriginal's Vice President of Trading and Business Development, declares that "Stables and his company Boston Nutraceuticals were involved as the representatives of Biotab in the negotiation of the Products to Biotab," and that Stables "was consulting for Biotab at the time and . . . introduced Biotab to Bioriginal" in 2012. Dkt. No. 156-4 (Kupper Decl.) ¶¶ 1–4. Kupper also declares that he "knew that Mr. Stables was working for Biotab . . . from mid-2012 through 2013." Id. Kupper further states that in late 2012, Bioriginal was working with defendants and their "representative," Stables, to "find[] the right formula for" the Products. Kupper avers that during that time, defendants and Stables "were putting time pressure on [Bioriginal] to get the products produced and shipped." Id. ¶ 11. He further declares: "When changes were made in the formulas, there were communications among Mr. Stables, Bioriginal and the encapsulators, often telephone calls because of the time pressure we were under, and either Mr. Stables or Defendants were involved in the process and one or both of them were aware of the changes." Id. ¶ 12. Responding to defendants' allegations that Bioriginal altered the formulas without defendants' knowledge or consent, Kupper reiterates that "Stables, who was Defendants' representative, was informed of any changes in the formulas," and that the "final products that were delivered were consistent with the formulas that had been approved by Mr. Stables, Bioriginal, and the encapsulators." Kupper adds that neither defendants "nor their agent Don Stables ever complained at the time of delivery that the products were not made according to the correct formula or . . . specification." Id. ¶ 13.

 According to Kupper, it was only after Bioriginal "filed this suit in August 2013 that Biotab claimed that the Products were defective." Id. ¶ 15. Bioriginal's Vice President of Finance, Starla Theriault ("Theriault"), also declares that Biotab never complained about the quality of the products that had been shipped prior to this litigation, and indeed sought to have more product delivered on credit. Dkt. No. 156-3 (Theriault Decl.) ¶ 3d.[5]

---

[5]To the extent the Court cites to Kupper's declaration, defendants' evidentiary objections thereto are OVERRULED. Kupper's statement that he "was personally involved in" the relevant negotiations is sufficient to demonstrate personal knowledge, and defendants' boilerplate hearsay and improper legal conclusion objections to the cited paragraphs lack merit. The Court also OVERRULES defendants' relevancy and personal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
|---|---|---|---|
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

    In his deposition, Stables stated that he met Biotab officer Zwicker in April 2012. Dkt. No. 156-5 (Fillerup Decl.) Ex. 10 (Stables Dep.) 36:8-25. Stables testified that he did not personally enter into an agreement with Biotab, but that his company Boston Nutraceuticals did enter into a written agreement with Biotab around June 2012, through which Boston Nutraceuticals was paid $5,000 to $10,000 a month "based on the project." Id. 43:20–44:5. Pursuant to this agreement, the first thing Stables did was write "standard operating procedures" for Biotab's manufacturing plants and distribution center. Id. 45:1–46:14. Additionally, Boston Nutraceuticals was tasked with "formulating or looking at formulations that they had to ensure that they had the correct dosage level." Id. 54:15-21. Stables testified that he and persons associated with the Boston location of non-party Capsugel created the formulas for the Products, which formulas were set down on paper. Id. 71:20–72:23. Stables also testified that the person "ultimately responsible for approving the formula" is "always the client," which in this case "would have been Biotab." Id. 76:20–77:7. Stables could not recall when the Eye Sotftgel formula was finally approved. Id. 77:8-10.[6] Stables testified that subsequent to providing the services discussed above, his separate company Boston BioPharm entered into an agreement to evaluate the Products disputed in this litigation, under which Stables and the company are "still providing services." Id. 51:13–52:10.

    **C.**     **Additional Background Regarding the Parties' Agreement**

    Kupper declares that, at the time the parties were negotiating the agreement in question, he and Bioriginal were not aware of false advertising claims that had been made against Biotab, a settlement Biotab had entered into with the State of California regarding those claims, or resulting restrictions on Biotab's marketing. Kupper Decl. ¶¶ 5–7 & Exs. 1, 2. Kupper also states that he and Bioriginal were unaware at the time, but later learned, that Biotab had a history of failing to pay vendors. See id. ¶ 10. Bioriginal

---

knowledge objections to the cited paragraph from Theriault's declaration, as well as other forms of objection for which defendants simply list an evidentiary rule without offering any supporting argument.

    [6]Stables referred to the Eye Softgels as the "NuSyte product."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

submits a declaration from Thomas Connelly, who was employed by Biotab from May 2012 to September 2013 and had previously worked "in the consumer packaging industry for several decades," who stated that defendants "ha[ve] a history of stringing suppliers along and not paying their suppliers," and that this "way of doing business is the main reason [he] left [his] employment at Biotab." Id. Ex. 3. Kupper declares that if he and Bioriginal were aware of these issues, they "never would have agreed to the terms of the sale of the Products that [they] agreed to in late 2012." Id. ¶¶ 8, 10.

Kupper declares that "by mid-2013, Biotab had refused to pay for the products that Bioriginal had delivered," that Bioriginal accordingly "discontinued delivering product to Biotab" and eventually filed this lawsuit. Id. ¶ 15. Kupper avers that bioriginal had to enter into contracts with third-party vendors in order to complete its part of the sale of the Products to defendants in a timely manner. Id. ¶ 14. He states that Bioriginal planned to pay those vendors with funds Biotab was to give Bioriginal in consideration for the Products, and that because Biotab failed to pay Bioriginal for the delivered products, "Bioriginal has been forced to use its own funds to pay the third-party vendors" millions of dollars. Id.

### III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
|---|---|---|---|
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. ANALYSIS

### A. Bioriginal's Claims

As to each of Bioriginal's claims at issue, defendants argue that there was no meeting of the minds as to the formulation of the products to be shipped, a material term of any agreement, so that there is no valid contract for Bioriginal to enforce. Memo. Supp. Mot. at 4–5. In the alternative, defendants argue that if a contract did form, Bioriginal materially breached it by changing the formulas without defendants' approval, and therefore cannot enforce the contract. Id. at 5–6.

Defendants are not entitled to summary judgment on either theory. As to each of Bioriginal's claims, a central premise of defendants' argument—which Bioriginal contests—is that defendants' approval was required for any formula modification. But the only evidence defendants cite for that proposition is the October purchase orders, summarized above. See Memo. Supp. Mot. at 4 ("To the extent that Plaintiff contends that Defendants [*sic*] approval was not required, that claim is belied by the October Purchase Orders issued by Defendants."); Reply at 5 ("Defendants' approval of the product formulations was expressly required by the Purchase Orders issued by Defendants."); DSUF ¶ 3 (relying only on the October purchase orders for the proposition that "the formulations for the products would be agreed upon").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
|---|---|---|---|
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

  The purchase orders do not clearly establish that such approval was required. The Eye Softgel order states: "As the development process progresses additional information [including] formula . . . and other critical information . . . will be included." Soni Decl. Ex. A at 1. Similarly, the Ultra Krill Capsules order states that "[a]s the development process is finalized additional information [including] formula number . . . and other critical information . . . will be included."[7] Id. at 2, 4. But neither purchase order states that any defendant had to approve any formula or formula modification. Because the evidence on which defendants rely does not show as a matter of law that any modifications to the formula had to be approved by defendants, defendants are not entitled to summary judgment on that ground. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1107 (9th Cir. 2000) ("[A]t summary judgment, a nonmoving party plaintiff has no obligation to produce anything until the moving party defendant has carried its initial burden of production.").

  But even if the Court were to assume that defendants had to approve any formula modification, defendants still would not be entitled to summary judgment. Bioriginal submits declaration testimony to the effect that Stables, acting as defendants' "representative" and "agent," was "informed of any changes in the formulas," and that the delivered Products were consistent with formulas that had been approved by "Mr. Stables, Bioriginal, and the encapsulators." Kupper Decl. ¶ 13. Kupper explains that Stables and his company had acted as Biotab's representatives throughout the negotiations. Id. ¶ 3. Kupper also declares under penalty of perjury (1) that when changes to the formula were made, there were communications—often telephone calls—between Stables, Bioriginal and the encapsulators; (2) that either Stables or defendants were aware of all formula changes; and (3) that Bioriginal accepted delivery of the Products and did not raise formula or product defect issues until after this lawsuit was filed several months later. Id. ¶¶ 12, 15. And although defendants submit declaration testimony from Zwicker stating that Stables was not authorized to approve the post-December 5, 2012 formula changes, there is no dispute that Stables was authorized to approve the prior draft formulation. See Zwicker Decl. ¶ 3.

---

  [7]The Ultra Krill Capsules purchase order also states: "Formula developed by Capsugel and Product Development Center, Boston." Id. at 2, 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
|---|---|---|---|
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

Because at summary judgment the non-movant's evidence must be credited and reasonable inferences drawn in the non-movant's favor, even if the Court were to reach the question of whether formula modifications were approved by Bioriginal, that question would present the disputed factual issues of whether Stables was acting as defendants' agent with actual or ostensible authority to approve the formula modifications, and in fact did so. See C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc., 213 F.3d 474, 479–80 (9th Cir. 2000) ("An agent's authority may be implied from the circumstances of a particular case and may be proved by circumstantial evidence. However, unless only one conclusion may be drawn, existence of an agency and the extent of an agent's authority is a question of fact and should not be decided on summary judgment." (citations omitted)); Bell v. Exxon Co., U.S.A., 575 F.2d 714, 715 (9th Cir. 1978) (reversing grant of summary judgment because "[u]nder California law, the existence of ostensible authority is a question of fact"); Clarendon Nat'l Ins. Co. v. Ins. Co. of the West, 442 F. Supp. 2d 914, 936 (E.D. Cal. 2006) ("The existence and scope of an agency is generally a question of fact, unless the essential facts are undisputed and subject to only one inference." (citing Brokaw v. Black-Foxe Military Inst., 37 Cal.2d 274, 278 (1951), and Van't Rood v. County of Santa Clara, 113 Cal. App. 4th 549, 562 (2003)). For these reasons, defendants are not entitled to partial summary judgment on Bioriginal's claims for breach of contract, account stated, open book account, and goods provided.

### B. Defendants' Counterclaim for Breach of Contract

Defendants' motion for summary judgment on their counterclaim for breach of contract is based on the same theory as their motion for summary judgment on Bioriginal's claims: that Bioriginal was required to obtain defendants' approval for any formula modifications, but failed to do so and therefore delivered goods that did not conform to the originally agreed-upon formula. See Memo. Supp. Mot. at 5–6. Accordingly, it fails for the reasons explained above.[8]

---

[8]In their reply brief, defendants appear to raise as additional arguments supporting their breach of contract counterclaim contentions that the delivered capsules produced a strong fishy smell, contained unsafe levels of arsenic, and were delaminating. See Am. Reply at 9–10. Defendants also submit declarations supporting these contentions, again

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-CV-05704-CAS(Ex) | Date | August 3, 2015 |
| Title | BIORIGINAL FOOD & SCIENCE CORP. v. BIOTAB NUTRACEUTICALS, INC., ET AL. | | |

### C. Defendants' Counterclaim for Misrepresentation

Finally, defendants seek summary judgment on their counterclaim for misrepresentation. But defendants voluntarily dismissed that counterclaim on April 30, 2014. Dkt. No. 34. On June 15, 2015, the Court denied a motion to modify the scheduling order so as to permit defendants to file additional counterclaims, including one for misrepresentation. Dkt. No. 124. Defendants nonetheless argue that they are entitled to summary judgment on this currently unpleaded claim, citing Federal Rule of Civil Procedure 15(b), which permits pleadings to be amended during and after trial to conform to proof. See Reply at 3. But defendants cite no authority for the proposition that they may seek summary judgment on a claim that has not been pleaded, after being denied leave to add that claim in a pretrial motion. And even if such a procedure were proper, defendants' motion for judgment on the misrepresentation claim is based on the same theory rejected above. See Memo. Supp. Mot. at 6. Accordingly, defendants' motion for partial summary judgment on this counterclaim fails as well.

### V. CONCLUSION

In accordance with the foregoing, defendants' motion for partial summary judgment is **DENIED** in its entirety.

IT IS SO ORDERED.

| | 00 | : | 15 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

for the first time in reply. Because these arguments were raised for the first time in reply, the Court does not consider them. See Citizens for Free Speech, LLC v. County of Alameda, 62 F. Supp. 3d 1129, 1132 n.1 (N.D. Cal. 2014) ("The [District] Court does not consider arguments raised for the first time in a reply brief." (citing United States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006), and United States ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000))).